Jack Silver, Esq. SB #160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy North. # 407
Sebastopol, CA 95472-2808
Tel. (707) 528-8175
Email: JSilverEnvironmental@gmail.com

David J. Weinsoff, Esq. SB #141372
LAW OFFICE OF DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760
Email: david@weinsofflaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

John Sullivan Kenny, Esq. SB #39206
KENNY & NORINE
A Law Corporation
1923 Court Street
Redding, CA 96001
Tel. (530) 244-7777
Email: jskenny@lawnorcal.com

Attorneys for Defendant
CITY OF MOUNT SHASTA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit Corporation,<br><br>    Plaintiff,<br>v.<br><br>CITY OF MOUNT SHASTA, a municipality,<br><br>    Defendant. | Case No.   2:20-cv-00080-JAM-KJN<br><br>[PROPOSED] CONSENT DECREE AND ORDER<br><br>Hon. John A. Mendez |

The following [Proposed] Consent Decree is entered into between Plaintiff, California River Watch and Defendant, City of Mount Shasta, a municipality. The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

**RECITALS**

WHEREAS, Plaintiff California River Watch ("River Watch") is an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of California, dedicated to protecting, enhancing, and helping to restore the surface waters and groundwaters of California, including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educating the public concerning environmental issues associated with these environs;

WHEREAS, Defendant City of Mount Shasta (the "City"), organized under the laws of the State of California, owns and operates the City of Mount Shasta Wastewater Treatment Plant ("Facility") and its associated sewer collection system for the purpose of collecting and conveying wastewater from residential, commercial, and industrial sources, subject to NPDES Permit No. CA0078051 ("NPDES Permit") under the federal Clean Water Act ("CWA"). The NPDES Permit requires the City to comply with the Statewide General Waste Discharge Requirements for Sanitary Sewer Systems ("Statewide WDR");

WHEREAS, on or about May 10, 2019, River Watch provided the City, the U.S. Environmental Protection Agency ("EPA"), EPA Region IX, and the Central Valley Regional Water Quality Control Board ("Regional Water Quality Control Board") with a Notice of Violations and Intent to File Suit under the CWA, 33 U.S.C. § 1365 ("CWA Notice Letter");

WHEREAS, on January 10, 2020, River Watch filed its Complaint against the City in the U.S. District Court, Eastern District of California, assigned Case No. 2:20-cv-00080 JAM-KJN alleging violations of substantive and procedural requirements of the CWA ("CWA Complaint");

WHERAS, the City denies any and all of River Watch's allegations and claims as set forth in the CWA Notice Letter and CWA Complaint;

WHEREAS, River Watch and the City have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth the terms and conditions appropriate for resolving

River Watch's allegations set forth in the CWA Notice Letter and CWA Complaint without further proceedings; and have consented to the entry of this [Proposed] Consent Decree and Order without trial of any issues, and hereby stipulate that, in order to settle the claims alleged by River Watch against the City in the CWA Notice Letter and CWA Complaint this [Proposed] Consent Decree should be entered; and,

WHEREAS, all actions taken by the City pursuant to this [Proposed] Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

NOW THEREFORE, it is hereby stipulated and agreed by the Parties, and ordered and decreed by this Court as follows:

## CONSENT DECREE

1. The above RECITALS are incorporated into and shall become a part of this [Proposed] Consent Decree.

### I. JURISDICTION

2. For purposes of entry of this [Proposed] Consent Decree, the Parties agree this Court has jurisdiction over the subject matter and the Parties in this action pursuant to CWA § 505(a), 33 U.S.C. § 1365(a).

3. Venue is proper in the Eastern District of California pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), because this is the judicial district in which the City is located. The CWA Complaint states claims upon which relief may be granted pursuant to CWA §505(a)(1), 33 U.S. C. § 1365(a)(1).

4. River Watch has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

### II. APPLICABILITY AND BINDING EFFECT

6. This Consent Decree shall apply to and be binding upon River Watch and its members, and the City and its elected officials, and both of their officers, employees, contractors, sub-contractors, consultants, agents, assigns and volunteers and each and every one of them acting under their direction

and/or control. To the extent that federal law (including federal principles of *res judicata*) allows, this Consent Decree shall be considered binding upon all persons and entities who may hereafter file a citizen suit against the City regarding claims that are the subject of this Consent Decree. However, this Consent Decree shall not be construed to limit the authority of the United States under CWA § 309, 33 U.S.C. § 1319, or of the Regional Water Quality Control Board under California law.

### III.   CONSENT DECREE TERM

7. The "Effective Date" of this Consent Decree shall be the date upon this the Consent Decree has been entered by the Court and becomes a final enforceable order. This Consent Decree shall expire on its own terms, and be of no further force and effect five (5) year from the Effective Date (hereafter, "Termination Date").

### IV.   AGREED REMEDIAL MEAURES BY THE CITY

8. In exchange for the delivery, execution, and performance of this [Proposed] Consent Decree and of the release by River Watch as provided herein, the City shall perform the below-specified remedial measures. The City reserves the right, in its sole discretion, to determine (i) which persons shall perform any work described herein, including contractors, and (ii) the scope and technical details of, and the manner to implement, such work subject to review and approval by the Regional Water Quality Control Board, or such other regulatory agency as may from time to time, exercise jurisdiction with respect to environmental matters under the NPDES Permit or Statewide WDR.

    8.1    <u>Sanitary Sewer Collection System Investigation and Repair</u>

        8.1.a    <u>Definitions.</u>

<u>Collection System</u>: The system of pipes and other assets owned or managed by the City used to collect and convey wastewater to the Facility.

<u>Condition Assessment</u>: An assessment that comprises inspection, rating, and evaluation of the existing condition of the Collection System and reflected in the Mount Shasta Asset Management Plan which shall be made part of the City's Sewer System Management Plan ("SSMP"). Inspection is based upon closed circuit television ("CCTV") inspection for sewer lines and inspection of lift/pump stations and manholes for defects. After CCTV inspection occurs, pipe conditions are assigned a grade based on the Pipeline Assessment and Certification Program ("PACP") rating system,

      developed by the National Association of Sewer Service Companies or equivalent rating system.

      <u>Condition Assessment Cycle</u>:  A Condition Assessment of the entire Collection System that requires each sewer line to be CCTV'd every ten (10) years, but does not require all sewer lines to be on the same CCTV schedule.

      <u>Full Condition Assessment</u>:  A Condition Assessment, (excluding Surface Water Condition Assessment(s) which are defined below) of all sewer lines and assets in the Collection System.

      <u>Surface Water Condition Assessment</u>:  A Condition Assessment of sewer lines and assets in the Collection System, located within two hundred (200) feet of Cold Creek and Big Springs Creek.

      <u>Significantly Defective</u>:  A sewer pipe is considered Significantly Defective if its condition receives a Structural or Operation and Maintenance grade of 4 or 5 based on the PACP rating system or an equivalent rating system developed by the City. The PACP assigns grades based on the significance of the defect, extent of damage, percentage of flow capacity restriction, and/or the amount of pipe wall loss due to deterioration.  Grade are assigned as follows:
5 – Most significant defect
4 – Significant defect
3 – Moderate defect
2 – Minor to moderate defect
1 – Minor defect.

      <u>Surface Waters</u>:  For the purposes of Surface Water Condition Assessment, Surface Waters shall include Cold Creek and Big Springs Creek.

8.1.b.  Within five (5) years after the Effective Date of this Consent Decree, the City shall complete a Surface Water Condition Assessment.

8.1.c.   Within one (1) year after completion of the Surface Water Condition Assessment, as it applies to sewer lines, lift stations, and manholes in the Collection System located within two hundred (200) feet of Big Springs Creek and Cold Creek, the City shall repair any defect that, in the City's professional judgment, may pose an immediate and significant risk to health or the environment. Significant repairs that cannot be done by City crews will be put in the Capital Improvement Program ("CIP") and will be completed as funding allows.

8.1.d.  The City shall complete a Full Condition Assessment within ten (10) years after the Effective Date of this Consent Decree, except for those gravity sewer lines that have

been CCTV'd within eight (8) years prior to the completion of the Full Condition Assessment or constructed within ten (10) years prior to the completion of the Full Condition Assessment.

        8.1.e.  Due to construction of older manholes and flowline restrictions in the base of the manhole, some manholes will not allow the CCTV equipment to be inserted for inspection. These manholes and segments will be skipped and placed on a list for replacement to accommodate inspection as time and funding allows. Such manhole replacements may be placed in the CIP.

    8.2    <u>Sanitary Sewer Overflow ("SSO") Reporting and Response</u>

        8.2.a.  <u>SSO Response</u>.  Regardless of the size or location of an SSO, the City agrees that from the Effective Date of this Consent Decree, it will respond to all SSOs as per Section 8.2.e. of this Consent Decree and in accordance with State Water Resources Control Board ("SWRCB") Order No. 2006-003, 2013-0058-EXEC, and any future modifications as adopted by the SWRCB.

        8.2.b.  <u>SSO Reporting</u>.  The City shall comply with all training, reporting, and response actions set forth in applicable State and Federal permits, and regulatory and legislative requirements imposed by the various agencies having jurisdiction over the Collection System. The City shall provide the following information to the California Integrated Water Quality System ("CIWQS") State Reporting System:

> (i)  The method or calculations, and the actual calculations, used for estimating total spill volume, spill volume that reached surface waters, and spill volume recovered, as approved by the SWRCB and Sanitary Sewer collection industry (e.g., the California Water Environmental Association/Southern Collection System Committee);

> (ii)  For Category I and II SSOs, a good faith effort to ascertain an accurate estimate of the start time of the SSO based upon direct observation and witness inquiry, rather than setting the start time of the SSO as the time the call was received reporting the SSO or the SSO was reported; and

> (iii)  Taking of photographs of the manhole flow at the SSO site using either the San Diego or Central Coast Method array (if applicable) to the SSO, or other photographic evidence that may aid in establishing the spill volume.  Photographs shall be taken with a camera that date and time-stamps the photographs.

        8.2.c.  <u>Chemical Root Control</u>.  The City does not, as of the Effective Date of this Consent Decree, use chemical root control.  If in the future the City uses chemical root control, it

[Proposed] Consent Decree and Order       5       2:20-cv-00080-JAM-KJN

shall use chemicals approved and/or recommended by the federal EPA or Regional Water Quality Control Board. All application shall comply with the recommendations of the manufacturer of the chemical and as required by Cal-OSHA and shall be included in the City's updated SSMP.

   8.2.d.   <u>SSMP and OERP Updates</u>.  Within sixty (60) days after the Effective Date of this Consent Decree, the City shall update its SSMP and its Overflow Emergency Response Plan ("OERP") to include the remedial measures set forth in this Consent Decree.  The City's SSMP shall be kept current (which includes the changes and modifications required by this Consent Decree including annual training for all personnel responsible for implementation of the SSMP), and properly certified (with all documents relating to the certification provided on the City's Department of Public Works' website.

   8.2.e.   <u>SSO Cleanup and Disinfection</u>.   Cleanup and disinfection procedures shall be set forth in the certified SSMP.  The City shall include the following cleanup and disinfection procedures associated with an SSO event:

  (i) Pursuant to the Statewide WDR, Section D.7, regardless of the size or location of a SSO, the City shall conduct water quality sampling and testing if, in the City's professional judgment, the SSO may pose an immediate and significant risk to health or the environment.   The factors that lead to a decision whether or not to conduct water quality testing of an SSO shall be documented and publicly available on the City's website.  Pursuant to Section D.7.v. of the Statewide WDR the City shall implement an adequate spill and response training program;

  (ii) The City shall post and maintain appropriate public notification signs and place barricades to keep vehicle and pedestrian traffic away from contact with spilled sewage if the SSO poses an immediate and significant risk to the public; and

  (iii) Water quality sampling and testing is required in accordance with SWRCB Order 2006-003, 2013-0058-EXEC, and any future modifications as adopted by the SWRCB, for any Category I SSO's in which 50,000 gallons or greater are spilled to surface waters, or if determined in the City's professional judgement, that the SSO may pose an immediate and significant risk to health or the environment.

 8.3 <u>Public Information</u>.  Within sixty (60) days after the Effective Date of this Consent Decree, the City shall create a link from the City's website to the SWRCB's CIWQS SSO Public Reports website, and shall publicize this new link to its customers and members of the public.

Additionally, the City shall publicize the 24-hour, 7 days per week emergency hotline on the City's website.

8.4  Capital Improvement Program.  The City agrees to update its CIP biennially to identify and prioritize the rehabilitation and replacement of sewer lines in the City's collection system based on the results of ongoing CCTV inspection and condition assessment programs.

8.5  Receiving Water Compliance. Constituents and parameters required for Receiving Water Limitations listed in the current and future NPDES Permits that do not have numerical or quantitative results that are submitted in CIWQS, and are more subjective in nature, will get reported monthly in the cover letter and submitted to CIWQS. Receiving Water limitations, such as color, floating material, oil and grease, and taste and odors, will be monitored at RSW-001 and RSW-002, as weather and accessibility allows, according to the monitoring frequency listed in the NPDES permit in effect.

## V.  RELEASE OF LIABILITY AND COVENANT NOT TO SUE

9.  It is the intent of the Parties that this Consent Decree constitutes a full and complete satisfaction of all rights, claims and demands by River Watch against the City with respect to any and all allegations or claims made in the CWA Notice Letter or any Clean Water Act violation up to the date of the CWA Notice Letter, with regard to the operation of the Facility and associated sewer collection system. River Watch on behalf of itself and any and all of its agents, representatives, successors, members, and assigns, except as otherwise provided for herein, does hereby absolutely, fully and forever release, relieve, remise and discharge the City and its past and present employees, officers, directors, attorneys, and the predecessors, successors, and assigns of any of them, from all causes of actions, claims, damages, demands, actions, attorneys' fees, costs of suit, and liabilities of every kind or nature whatsoever, arising exclusively out of the specific claims asserted in the CWA Notice Letter or CWA Complaint concerning the City's operation and ownership of the Facility and associated sewer collection system.  The release provided for herein shall be valid and effective whether the claims, causes of action, or liability hereby released (i) were known or unknown, suspected or unsuspected, (ii) were based in contract, tort, statute, or otherwise, or (iii) arise at law or in equity.

The release shall survive the termination of this Consent Decree whether by satisfaction of the terms and conditions hereof or operation of law.

The Parties acknowledge they are familiar with Section 1542 of the California Civil Code, and each Party expressly waives and relinquishes any rights and benefits which it has or may have under Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties acknowledge that each has specifically reviewed with its attorney the meaning and effect of the release set forth herein, the language of Civil Code Section 1542, and the waiver contained herein; that their attorneys have fully explained the impact of these provisions, and the Parties knowingly accept the risks associated with this provision.

For a period five (5) years after the date Effective Date of this Consent Decree, River Watch agrees that neither River Watch, its officers, executive staff, members of its governing board, nor any organization under the control of River Watch, its officers, executive staff and members of its governing board, will serve any Notices of Violation and Intent to Sue or file any lawsuit against the City seeking relief for the alleged violations of the CWA (33 U.S.C. § 1251, et seq.) with regard to the City's Facility and associated sewer collection system and unpermitted discharges, nor will River Watch initiate or support such lawsuits against the City, brought by other groups or individuals, by providing financial assistance, personnel time or any other affirmative actions. For the duration of this Consent Decree, River Watch agrees to submit any claims against the City seeking relief for alleged violations of the CWA or RCRA, or any similar state statutes and/or regulations, for resolution under the dispute resolution process set forth in Section VIII.15. of this Consent Decree.

## VI. RIVER WATCH ATTORNEYS' FEES AND COSTS

10. Within ten (10) calendar days after the Effective Date of this Consent Decree, the City shall pay to River Watch the sum of Seventy-Five Thousand Dollars ($75,000.00). Payment shall be made by the City to River Watch in the form of a single check payable to "California

River Watch and mailed to the Law Office of Jack Silver, 708 Gravenstein Hwy. North, #407, Sebastopol, CA 95472-2808. Said payment shall constitute full satisfaction and payment for all costs of litigation and attorneys' fees incurred by River Watch that have or could have been claimed in connection with this matter up to and including the Effective Date of this Consent Decree, and for River Watch's expert and attorneys' fees and costs for monitoring and enforcing the City's compliance with the ongoing obligations under this Consent Decree up to and including the Termination Date.

## VII.  NOTICE TO THE FEDERAL GOVERNMENT

11. The Parties acknowledge and agree that entry of this Consent Decree is subject to the requirements of CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), which provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following receipt of a copy of the proposed consent judgment by the Attorney General and the [EPA] Administrator." Within five (5) business days following the Parties' execution of this document, River Watch shall serve copies upon the EPA Administrator and the United States Department of Justice for agency review consistent with 40 C.F.R. § 135(a). The agency review period expires forty-five (45) days after receipt by the agencies, as evidenced by written acknowledgment of receipt by the agencies or the certified return receipts, copies of which shall be provided to the City if requested. In the event the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

## VIII.  GENERAL PROVISIONS

12. <u>No Admission</u>.  This [Proposed] Consent Decree is the direct result of a compromise of disputed allegations and claims.  As such, this [Proposed] Consent Decree shall not, for any purpose, be considered as an admission of liability by the City, nor shall the payment of any sum of money in consideration for the execution of this Consent Decree constitute or be construed as an admission of any liability by the City which expressly denies any such liability or wrongdoing.

13. <u>Delays in Scheduling Implementation</u>.  In the event implementation by the City of the remedial measures set forth in Section IV.8. of this Consent Decree does not occur by the agreed upon dates, despite the timely good faith efforts of the City to acquire any necessary approvals and/or permits, or due to factors unforeseen at the time this Consent Decree was entered into, the

City agrees to notify River Watch in writing as soon as practicable after the anticipated delay becomes apparent, and in any case except in a case of force majeure as described below, not less than twenty (20) days prior to any deadline set forth in Section IV.8., and shall describe the reasons for the anticipated delay.

14. <u>Force Majeure</u>. The City shall not be deemed in default or breach of this Consent Decree by reason of any event which constitutes a force majeure. For purposes of this Consent Decree, a force majeure is defined as any event arising from causes beyond the reasonable control of the City or its contractors that delay or prevents performance. This includes, without limitation, acts of God, acts of war, acts of terrorism, fire, explosion, extraordinary weather events, restraint by court order or public authority, or other causes beyond the City's reasonable control. Neither increased costs nor economic hardship shall constitute a force majeure.

15. <u>Breach of Consent Decree and Dispute Resolution</u>. Any disputes between River Watch and the City concerning any alleged breach of this Consent Decree shall be subject to the following dispute resolution procedures. Failure to satisfy the payment condition in Section VI of this Consent Decree is a substantial breach of this Consent Decree and relieves River Watch of its obligations under this Consent Decree.

15.a <u>Good Faith Negotiations</u>. River Watch and the City shall make good faith efforts to resolve informally any alleged breach of the Consent Decree. If informal efforts to resolve the alleged breach are unsuccessful, the Party claiming a breach shall provide written notice of the alleged breach and that Party's intent to initiate the dispute resolution procedure of this Section VIII.15. The notice shall include a recitation of all facts and circumstances giving rise to the dispute, including the particular sections of this Consent Decree alleged to have been breached.

15.b. <u>Mediation.</u> If the dispute is not resolved by the Parties within thirty (30) days after such notice is given, such dispute shall be submitted to mediation before a mutually agreed neutral mediator. The Parties shall each bear their own costs and attorneys' fees in connection with such mediation.

16. <u>Waiver</u>.  By agreeing to the dispute resolution provisions set out in Section VIII.15 of this Consent Decree, the Parties understand they are waiving certain important rights and protections that otherwise may have been available to each of them if a dispute between them were determined by judicial action including, without limitation, the right to a jury trial, and certain rights of appeal. Other than the remedies contained within this Consent Decree including dispute resolution and specific performance of the terms of this Consent Decree, there are no other remedies. The Parties specifically agree there is no basis within this Consent Decree or within the contemplation of the Parties to support a claim for consequential damages due to any form of breach.

17. <u>Notices</u>.  All notices, consents, approvals, request, demands and other communications (collectively, "Notice") which the Parties are required or desire to serve upon or deliver to the other Party shall be in writing and shall be given by electronic mail, when possible, and if not, by certified United States mail, return receipt requested, addressed as set forth below:

If to River Watch:	Jack Silver, Esq.
	Law Office of Jack Silver
	708 Gravenstein Hwy. No. # 407
	Sebastopol, CA 95472
	Email:  lhm28843@sbcglobal.net

If to the City:	City Manager
	City of Mt. Shasta
	305 No. Mt. Shasta Blvd.
	Mt. Shasta, CA 96067

	John Sullivan Kenny, Esq.
	KENNY & NORINE
	1923 Court Street
	Redding, CA 96001
	Email: jskenny@lawnorcal.com.

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by certified mail shall be deemed received upon the date signed for.  Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided sender does not receive electronic notice of non-delivery. If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically

be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

18. <u>Attorneys' Fees</u>.  Other than the payment to River Watch under Section VI of this Consent Decree, each Party shall bear its own past and future attorneys' fees and costs relating to the subject matter of this Consent Decree.

19. <u>Parties' Acknowledgement of Terms</u>.  This Consent Decree has been carefully and fully read and reviewed by River Watch, the City, and their respective counsel who hereby represent that the contents of this Consent Decree are understood, and agree that this Consent Decree is binding on each Party or its respective predecessors, successors, and assigns and as described above.

20. <u>Interpretation and Applicable Law</u>.  This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law.  This Consent Decree shall be interpreted and construed as a whole, according to its fair meaning and not strictly for or against any Party, and without regard to which Party drafted the Consent Decree.  All of the promises, representations, and warranties contained in this Consent Decree survive the execution of this Consent Decree.

21. <u>No Assignments</u>.  Each Party to this Consent Decree represents and warrants that it has not assigned, transferred, hypothecated, or sold to any third person or entity, any of the rights or obligations released by or entered into this Consent Decree.

22. <u>Counterparts</u>.  This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same Consent Decree.

23. <u>Headings</u>.  The headings used in this Consent Decree are for the convenience of reference and shall not be used to define any provision.

24. <u>Entire Agreement in Writing</u>.  This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral and written), and writings with respect to the subject matter set forth herein.

25. <u>Modification or Amendment</u>.  This Consent Decree or any of its provisions may be modified or amended only by written agreement executed by all Parties to this Consent

26. <u>Severability</u>.  The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision.  If, in any action before any court or other tribunal or competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, than this Consent Decree shall be deemed amended to delete herefrom such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Consent Decree in the particular jurisdiction in which such adjudication is made.

27. <u>Representations and Warranties</u>.  This Consent Decree is given voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind.  No Party, nor any officer, agent, employee, representative, or attorney of or for any Party, has made any statement or representation to any other Party regarding any fact relied upon in entering into this Consent Decree, and no Party is relying upon any statement, representation, or promise of any other Party, nor of any officer, agent, employee, representative, or attorney of or for any Party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

28. <u>No Third-Party Beneficiaries</u>.  This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever.  All of the rights, duties, and obligations contained in this Consent Decree shall insure to the benefit of and be binding upon the Parties and their successors and assigns.

29. <u>Authority</u>. Each of the persons executing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

## IX. RETENTION OF JURISDICTION

30. This Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve any disputes arising hereunder for a period of five (5) years after its entry. After this five (5) year period, the City's obligation to comply with the injunctive relief provided for herein shall terminate.

## X. COURT APPROVAL

31. The Parties hereby respectfully request that this Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, River Watch and the City waive their respective rights to a hearing or trial on the allegations of the CWA Complaint and CWA Notice Letter which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IT IS SO AGREED AND STIPULATED:

DATED: 11/25/2020          CITY OF MOUNT SHASTA

                           By: *Bruce D. Pope*

DATED: 11/25/2020          CALIFORNIA RIVER WATCH

                           By: *[signature]*
                           Larry Hanson, Board President

APPROVED AS TO FORM:

LAW OFFICE OF JACK SILVER

By: *Jack Silver*
    Jack Silver

DATED: 11.25.2020

LAW OFFICE OF DAVID WEINSOFF

By: *David J. Weinsoff* (signature)
David J. Weinsoff

DATED: 11.25.2020

Attorneys for California River Watch


KENNY & NORINE

By: *John Sullivan Kenny* (signature)
John Sullivan Kenny
Attorney for the City of Mount Shasta

DATED: 11/25/2020


IT IS SO ORDERED:

DATED: _____

John A. Mendez
U.S. District Court Judge